IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ANTHONY CZESAK and BOGUSLAW CZESAK,<br>    Plaintiffs,<br><br>v.<br><br>RAVINDRA KASHYAP, MD, AIYUB PATEL, MD, "JOHN DOE," and THE METHODIST MEDICAL CENTER OF ILLINOIS,<br>    Defendants. | Case No. 1:24-cv-01006-JEH |

**Order**

Now before the Court is Defendant Ravindra Kashyap, MD, Aiyub Patel, MD, and Methodist Medical Center of Illinois's Motion to Dismiss Plaintiff's Second Amended Pro Se Civil Rights Complaint (D. 30).[1] For the reasons set forth, *infra*, the Motion is GRANTED.

**I**

On January 5, 2024, Plaintiff Anthony Czesak (Anthony) filed a *pro se* complaint against Defendants Ravindra Kashyap, MD and Aiyub Patel, MD, both pulmonologists, alleging violations of 42 U.S.C. § 1983, Section 1557 of the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18116, the Rehabilitation Act, 29 U.S.C. § 794, the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd, and various sections under the Illinois Health Care Surrogate Act and the Illinois Powers of Attorney for Health Care Law. Anthony identified January 6, 2022 as the date of the complained of conduct, alleging the Defendants actively

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

sought to deprive his dad of his civil rights, including his right to life, when they threatened to withhold care – "pull the plug" – to kill his sedated, disabled father twice against Anthony's and his dad's explicit wishes, both times with only about 24 hours' notice. Original Compl. (D. 1 at ECF pp. 5-8). On August 19, 2024, Anthony filed an amended complaint as a matter of course in which he added The Methodist Medical Center of Illinois (Methodist) and "John Doe" as Defendants.

On November 5, 2024, the Court granted the Defendant doctors' motion to dismiss the first amended complaint (D. 17) finding: Anthony's Section 1983 claim failed because the doctors' healthcare decisions were not state action; the individual Defendants were not subject to a claim under the ACA; Anthony failed to state claims against Methodist under Section 1557 of the ACA, the Rehabilitation Act, and the Americans with Disabilities Act (ADA) where he failed to demonstrate that he was a "handicapped individual" or that he was denied any specific benefit for which he was "otherwise qualified"; Anthony failed to demonstrate his standing to assert a Section 1557 suit or ADA suit on his father's behalf; Anthony's claims under the EMTALA against the individual Defendants failed as a matter of law, and he lacked standing to assert such a claim on his father's behalf; and Anthony could not assert a claim under the cited Illinois laws on behalf of his living father. 11/5/2024 Order and Opinion (D. 25). The Court granted Anthony leave to amend his complaint to cure the defects the Court identified in its order. *Id.*

On February 28, 2025, a Second Amended Complaint (D. 29) was filed in which Anthony's father, Boguslaw Czesak (Boguslaw) was added as a plaintiff. In their 13-count Second Amended Complaint, they allege violations of Section 1983, Section 1557 of the ACA, the Rehabilitation Act, the EMTALA, the ADA, the Illinois Health Care Surrogate Act, and the Illinois Powers of Attorney for Health Care Law. They also allege intentional infliction of emotional distress and five counts of common law fraud.

II

2

Boguslaw was hospitalized at Methodist Hospital with COVID-19 and related complications between November 18, 2021 and March 17, 2022.[2] In their Second Amended Complaint, Anthony and Boguslaw allege[3] the Defendants owed Anthony, as Boguslaw's Health Care Power of Attorney (POA), a duty of care as to his father, but Defendant Methodist ignored that POA. Anthony and Boguslaw state the Defendants discriminated against Boguslaw due to his Acute Respiratory Distress Syndrome (ARDS) when they threatened to withhold health care to kill Boguslaw two times in total against his and Anthony's explicit wishes. The doctors first "threatened" to "pull the plug" on December 27, 2021, and they "threatened" to do so again on January 6, 2022. Dr. Patel was not following his own hospital's policy the first time, and Anthony threatened legal action when Dr. Kashyap threatened to do so the second time. The second "threat" was made with the rationale being that Boguslaw was non-responsive despite him unambiguously responding to commands by puckering his lips and moving his head to give a kiss on command.

Anthony experienced stress due to the repeat "death threats" (as he calls the instances when the doctors "threatened" to "pull the plug") and he was thereafter hospitalized, had to take time off work, and was diagnosed with and treated for post-traumatic stress disorder and other physical and mental health problems. Before the first "death threat" and continuing after the second one on January 6, 2022, Methodist staff denigrated Boguslaw's quality of life because of his ARDS. Methodist staff did not answer Anthony's questions about Boguslaw's condition, did not share Boguslaw's requested medical records with Anthony for over 30 days, would not give Anthony time to get an independent doctor's second opinion, and told Anthony numerous times that it was not a triage issue and there were open hospital beds at

---

[2] This fact is taken from the Defendant doctors' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Pro Se Civil Rights Complaint. (D. 19 at ECF pp. 1, 2).

[3] When ruling on a motion to dismiss, the court must take all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Indep. Truck Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

Methodist. Methodist and its staff tried to transfer Boguslaw to a hospital three hours away against his and Anthony's wishes, and Methodist tried to do so during a snowstorm and when Boguslaw was fighting an infection. Methodist and its staff let Boguslaw's ex-wife, a hospital employee, visit his room after hours after Anthony explicitly told them not to allow that. Methodist and its staff did not adequately update Boguslaw's progress history and so he was not transferred to multiple rehabilitation hospitals. Methodist and its staff transferred Boguslaw to another floor where his room was 80 degrees and could not be cooled down for weeks. On February 14, 2022, a nurse told Anthony that while Boguslaw woke up from his coma, that did not mean he would live a fully, happy, healthy life, that he still had a huge risk of declining, and that she did not think Anthony was being realistic.

### III

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted." A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555. The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Moreover, "[a] document filed *pro se* is to be liberally construed" and a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### A

#### 1

The Defendants argue Anthony improperly adds his father, Boguslaw, as a plaintiff where considering several factors – Anthony simply added Boguslaw's name

4

to the caption and his electronic signature at the end, there is no entry of appearance on file on behalf of Boguslaw, their claims are commingled – it would be improper to say Boguslaw is representing himself as required of a *pro se* plaintiff, and Anthony is acting beyond his *pro se* capacity by holding himself out as a representative of Boguslaw's claims. Also, the Defendants appear to dispute the authenticity of Boguslaw's electronic signature appearing in the Second Amended Complaint. Finally, the Defendants argue Boguslaw is time-barred from being added as a plaintiff in this matter.

All of the Plaintiffs' federal claims have a two-year statute of limitations. *See Towne v. Donnelly*, 44 F.4th 666, 670 (7th Cir. 2022) (stating the statute of limitations for Section 1983 claims in Illinois is two years); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) (explaining Illinois's two-year statute of limitations for personal injuries applied where the plaintiff's ADA claim was most closely related to a personal injury action); *Rutledge v. Ill. Dep't of Human Servs.*, 785 F.3d 258, 260 (7th Cir. 2015) (explaining the Seventh Circuit has held Illinois's two-year statute of limitations for personal-injury suits applies to suits filed in Illinois under Section 504 of the Rehabilitation Act); *and* 42 U.S.C. § 1395dd(d)(2)(C) ("No action may be brought under this paragraph [of the EMTALA] more than two years after the date of the violation with respect to which the action is brought"). The crux of the Plaintiffs' claims is that the Defendants threatened to "pull the plug"/withhold life-sustaining treatment and did so because of Boguslaw's disability. The last instance identified in the Plaintiffs' Second Amended Complaint when the threat occurred was January 6, 2022. Because the Second Amended Complaint adding Boguslaw as a plaintiff was not filed until February 28, 2025, his claims are barred unless they relate back to when Anthony filed his original complaint on January 5, 2024.

Federal Rule of Civil Procedure 15(c) provides, in relevant part:

An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1). The Advisory Committee Notes to the 1966 amendment to Federal Rule of Civil Procedure 15(c) acknowledged that while the "relation back of amendments changing plaintiff is not expressly treated in revised Rule 15(c)," the "chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." The Defendants argue Anthony cannot claim mistake as to the identity of his own father given the basis of all his allegations involve his father's hospital stay.

The Defendants do not and cannot argue that Boguslaw asserts claims that arose out of the conduct, transaction, or occurrence set out in Anthony's original pleading; the entirety of Anthony's original complaint pertained to the treatment his father received while at Methodist. As for the other relation-back requirements, the Defendants certainly had fair notice of Boguslaw's claims against them and will not cause the Defendants undue prejudice if allowed where the alleged facts in support of those claims appeared in the original complaint. *See Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1043 (N.D. Ill. 2000), (rejecting the "mechanical[]" application of Rule 15(c)'s mistake requirement to the addition of a new plaintiff and focusing,

instead, on "whether the new claim is one that the existing defendant had fair notice someday might be added to the case"). The individual Defendants cannot feign ignorance that they would later have to defend against the claims appearing in the original complaint by the new, correct plaintiff in light of the new Plaintiff's (the patient father) *pro se* status and relationship to the original *pro se* Plaintiff (the patient's son).

The addition of Boguslaw as a plaintiff in this case relates back to the date this case was filed – January 5, 2024 – and so his claims are not time-barred. As for the Defendants' other challenges to the addition of Boguslaw, there is no requirement a *pro se* party enter a formal appearance in a case, the Defendants cite no authority for the proposition that a newly named plaintiff must submit an IFP petition where the filing fee has already been paid in full, and nothing before the Court definitively shows that Boguslaw has no knowledge of this case or did not affix or direct that his electronic signature be affixed to the Second Amended Complaint.

**2**

The Defendants also argue that the Plaintiffs' claims against Methodist and "John Doe" are time-barred because they do not relate back to the original complaint. They contend Anthony made no "mistake" when he did not add Methodist as a Defendant in the original complaint. Whether a plaintiff commits a "mistake" which would permit an amendment to relate back depends on "what the prospective *defendant* knew or should have known" and "not what the *plaintiff* knew or should have known." *Herrera v. Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021) (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010)) (emphasis in original). "A plaintiff's 'deliberate but mistaken choice,' does not entirely foreclose an amendment from relating back under Rule 15(c)(1)(C)." *Id*. at 498 (quoting *Krupski*, 560 U.S. at 549).

Here, Anthony originally named only two individual doctors at Methodist as Defendants, but Anthony also listed they were employed with Methodist, alleged

7

they conspired with their employer (Methodist) to deny his dad and him their civil rights and civil liberties, alleged the events occurred at Methodist Hospital, and alleged "the hospital and staff" took various wrongful actions. "Because a plaintiff's knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party's interest in repose." *Krupski*, 560 U.S. at 550. Such are the circumstances here.

Methodist and its staff were expressly identified from the very beginning of this case and allegations as to Methodist were expressly made in the original complaint. But for Anthony's, a *pro se* plaintiff, "wrong action or statement proceeding from faulty judgment, inadequate knowledge or inattention," Methodist knew or should have known the action would have been brought against it as well. *Krupski*, 560 U.S. at 548-49 (quoting Webster's Third New International Dictionary's definition of "mistake"). Moreover, the Defendants do not and cannot argue the claims against Methodist did not arise out of the conduct, transaction, or occurrence set out in Anthony's original pleading. Methodist also surely received notice[4] of this lawsuit such that it will not be prejudiced in defending on the merits given the allegations as to Methodist that appeared therein and where its two physicians were identified as being employed by Methodist in the original complaint.

Whereas the Plaintiffs' claims against Defendant Methodist are not time-barred as they relate back to the original complaint's filing date of January 5, 2024, claims against Defendant "John Doe" are untimely and "John Doe" must therefore be dismissed. *See Herrera*, 8 F.4th at 498 ("naming a John Doe defendant does not constitute a 'mistake' within the meaning of Rule 15(c)(1)(C)(ii)").

---

[4] The Court *sua sponte* extended Anthony's time to serve the original Defendants in accordance with Federal Rule of Civil Procedure 4(m) to July 22, 2024 on June 20, 2024. *See* 6/20/2024 Text Order. Counsel for the Defendant doctors entered their appearances on June 25, 2024 (D. 4) and July 15, 2024 (D.6). *See Keller v. U.S.*, 444 F. App'x 909, 911 (7th Cir. 2011) (unpublished opinion) ("Rule 15(c) incorporates not only Rule 4(m)'s standard allowance of [90] days for service of process, but also any extension of time for good cause.").

B

The original defect the Court identified as to the Plaintiffs' Section 1983 claims appears again in the Second Amended Complaint. Namely, the Plaintiffs fail to allege state action to support a Section 1983 action against the Defendants. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) ("In order to state a claim under Section 1983, a plaintiff must allege that the defendants deprived him of a right secured by the Constitution or laws of the United States, *and that the defendants acted under color of state law.*") (emphasis added); *see also Babchuk v. Ind. Univ. Health, Inc.*, 809 F.3d 966, 971 (7th Cir. 2016) (finding private hospital was not a state actor under Section 1983); *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) (finding district court properly dismissed plaintiff's Section 1983 claims where the hospital was a private entity and nothing in the complaint suggested it was acting under color of state law) (*Reed* 1). The allegations in their Second Amended Complaint and citations to authority are nearly identical to the arguments made and authority cited in Anthony's opposition to the motion to dismiss the first amended complaint which the Court rejected in its November 5, 2024 Order and Opinion (D. 25). For the reasons set forth in that Order and Opinion, the Plaintiffs' Section 1983 claims are dismissed.

C

The Defendants next argue that the Plaintiffs' claims under the ACA, Rehabilitation Act, and the ADA are inadequately pled and without basis for relief.

As an initial matter, the November 5, 2024 Order and Opinion provided the parties did not dispute that the individual Defendant doctors are not subject to a claim under the ACA. The Order and Opinion also found that Anthony failed to demonstrate his standing to assert a Section 1557 suit on his father Boguslaw's behalf, and Anthony's alleged injuries of hospitalization for heart and chest pain, a diagnosis of PTSD, and other mental conditions as a result of Methodist's actions toward his father were not injuries that may give rise to an associational claim. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1143 (11th Cir. 2014) ("the threshold

9

for associational standing under both the RA and the ADA is the same: non-disabled persons have standing to seek relief under either statute only if they allege that they were personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person"); *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 611 (7th Cir. 2020) (relying, in part, upon the reasoning in *McCullum*). The Order and Opinion further found that Anthony failed to demonstrate the necessary elements for his ADA claim and did not have standing to assert an ADA suit on his father's behalf. It is not entirely clear as to whether both Plaintiffs or just Boguslaw brings the Section 1557, Rehabilitation Act, and ADA claims. To the extent Anthony still brings his own Section 1557, Rehabilitation Act, and ADA claims and the Plaintiffs together bring a Section 1557 claim against the Defendant doctors, the defects identified in the November 2024 Order and Opinion have not been remedied and so those claims are again dismissed as to the individual doctors (Section 1557) and as to Anthony.

> Section 1557 of the ACA states:
>
> [A]n individual shall not, on the ground prohibited under . . . section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a). The "enforcement mechanisms provided for and available under" the Rehabilitation Act "shall apply for purposes of violations of this subsection." *Id.*; *see also* 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act states an "otherwise qualified individual with a disability" shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

To establish a violation of Section 504 of the Rehabilitation Act, a plaintiff must establish four elements: "(1) the plaintiff must be a handicapped individual as defined by the Act; (2) the plaintiff must be 'otherwise qualified' for participation in the program; (3) the program must receive federal financial assistance[5]; and (4) the plaintiff must have been denied the benefits of the program solely because of his handicap." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (*Reed* 2). Title III of the ADA prohibits "discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[6] "The ADA and the Rehabilitation Act are otherwise very similar, but the Rehabilitation Act prohibits discrimination only if it is 'solely by reason of' a person's disability." *Reed* 2, 915 F.3d at 484.

The Defendants argue the Plaintiffs make several conclusory statements but fail to allege any facts that Defendants denied Boguslaw access to a program or activity specifically because of a disability. In opposition to the Defendants' Motion to Dismiss, Plaintiffs argue that the Defendant doctors sought to deny Boguslaw access to their hospital and medical treatment based on his disability. Even accepting as true the Plaintiffs' allegations and all reasonable inferences therefrom and even while giving them "fair and meaningful consideration," the Plaintiffs fail to state claims for discrimination. *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir.

---

[5] Boguslaw alleges he is a qualified individual with a disability and that Methodist receives Medicare and Medicaid reimbursements. The Defendants do not dispute those allegations. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217 (2022) (explaining defendant was subject to the Rehabilitation Act and ACA because it "receives reimbursement through Medicare and Medicaid for the provision of some of its services").

[6] The Plaintiffs allege Methodist is a "public entity" under the ADA, but there are no allegations that it falls within the definition of "public entity" set forth in the ADA. *See* 42 U.S.C. § 12131(1) (defining "public entity" to include any state or local government, instrumentalities of a state or states or local government, and the National Railroad Passenger Corporation and any commuter authority). In light of Plaintiffs' *pro se* status, the Court applies Title III of the ADA, the correct provision, which "applies generally to hospitals." *Reed* 2, 915 F.3d at 477. Even if the Court were to analyze the Second Amended Complaint pursuant to Title II, the Plaintiffs' ADA claim would still fail for the reasons set forth, *infra*.

1996) (repeating that a trial court must ensure a *pro se* litigant's claims are given a fair and meaningful consideration). The details Plaintiffs provide do not "present a story [of discrimination] that holds together. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the Plaintiffs' allegations tell the story of Boguslaw's hospital admission for purposes of medical treatment during which the Defendant doctors and other Methodist staff (as referred to several times in the Second Amended Complaint) provided that treatment, provided information to Anthony based upon their medical judgment, suggested a course of treatment based on the medical information and knowledge they had as to Boguslaw, and the Plaintiffs were simply upset by the experience. Those allegations are, in reality, complaints about the medical care, attention, and decisions made as to Boguslaw to which the ADA and Rehabilitation Act are not responsive. *See McDaniel v. Syed*, 115 F.4th 805, 825 (7th Cir. 2024) ("As a general matter, the ADA and the Rehabilitation Act do not apply to issues of allegedly inadequate medical treatment"); *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006) (unpublished opinion) (stating the plaintiff "cannot challenge a medical treatment decision under the ADA"); *Underhill v. Lawrence Cty. Sheriff's Dep't*, No. 4:20-cv-00125, 2021 WL 2312813, at *1 (S.D. Ind. June 7, 2021) ("But inadequate medical care cannot serve as the basis for a claim under the ADA or the Rehabilitation Act."). Moreover, the Plaintiffs' ADA claim fails for the additional reason that they complain of past events and only seek money damages. Money damages are not available to private parties under Title III of the ADA. *Ruffin*, 181 F. App'x at 585 (citing 42 U.S.C. § 12188(a)(1)).

While the Court is not unsympathetic to how unpleasant the trajectory of Boguslaw's illness must have been for him and his son, Anthony, none of the occurrences of which the Plaintiffs complain amount to disability discrimination. Notably, Boguslaw does not allege he did *not* receive treatment by reason of his ARDS or that the Defendants refused to treat him because of his ARDS. As the Defendants point out, Boguslaw does not allege that Defendants denied him access to a program

or activity specifically because of ARDS. To the extent the Plaintiffs allege the Defendants underscored his ARDS when presenting Anthony with the picture of things, "federal law 'forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap.'" *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019) (stating "federal law 'forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap.'") (quoting *Anderson v. Univ. of Wis.*, 841 F.2d 737, 740 (7th Cir. 1988)); *see also McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (explaining that if a complaint's allegations "give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief") (internal quotations and citations omitted). It would be expected of a doctor treating a patient with COVID-19 who had an underlying lung condition to highlight the latter in making medical observations and rendering medical opinions as to course of treatment. The Plaintiffs' conclusory allegations that the Defendants acted knowingly, intentionally, willfully, and maliciously do not transform his other allegations into adequately alleged claims of discrimination. *See McCauley*, 671 F.3d at 616 (stating "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth [to which well-pleaded facts in the complaint are entitled].").

The Plaintiffs fail to state claims under the ACA, Rehabilitation Act, and ADA.

### D

The Defendants next argue the Plaintiffs' claims under EMTALA are vague and fail to meet the criteria under that Act. "The EMTALA imposes two primary obligations on certain federally funded hospitals," one of which being "if the hospital determines that the individual has an emergency medical condition, then the hospital must either 'stabilize' the medical condition or must arrange for the transfer of the individual to another medical facility." *Thomas v. Christ Hosp. and Med. Center*, 328

F.3d 890, 893 (7th Cir. 2003) (citing 42 U.S.C. § 1395dd(b)(1)).  The EMTALA defines "to stabilize" with respect to an "emergency medical condition" as "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result . . . ." 42 U.S.C. § 1395dd(e)(3)(A).

Though Defendants argue the Plaintiffs fail to allege any facts showing Methodist is a "participating hospital" as required by the EMTALA, the Plaintiffs sufficiently allege that Methodist receives reimbursements from Medicare and Medicaid. *See Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1260 (9th Cir. 2001) ("Redbud was a 'participating hospital' because it was a 'hospital' which participated in Medicare.") (citing 42 U.S.C. §§ 1395cc, 1395dd); *Byrne v. Cleveland Clinic*, 684 F. Supp. 2d 641, 656 (E.D. Pa. 2010) ("A 'participating hospital' is defined as one that has entered into a 'provider agreement' under 42 U.S.C. § 1395cc, which permits hospitals to seek Medicare or Medicaid reimbursement") (citing 42 U.S.C. §§ 1395dd(e)(2), 1395cc).  Nevertheless, the Plaintiffs' other allegations fail to state a claim for violations of the EMTALA.

The Plaintiffs rest their EMTALA claim on the fact that the Defendant doctors and Methodist threatened to remove Boguslaw's life-sustaining care such that he would no longer be stabilized "while his vital signs crash until he died." Second Am. Compl. (D. 29 at ECF p. 16).  Those allegations fall short of stating a plausible EMTALA claim.  As the Defendants argue, the Plaintiffs merely predict what may have occurred.  Very clearly, Methodist's medical staff sought to stabilize Boguslaw upon his admission to the hospital and expended efforts to keep him stable.

No one actually removed his life-sustaining care as illustrated by the Plaintiffs' allegations that Boguslaw "is home and 100 percent NOT in a persistent vegetative state." *Id*. at ECF p. 3 (emphasis in original).  Similarly, their allegations make clear he was not actually transferred to another hospital in Chicago in spite of the fact Methodist and its staff "tried" to do so.  Second Am. Compl. *Id*. at ECF p. 4; *see Beller*

14

*v. Health and Hosp. Corp. of Marion Cty., Ind.*, 703 F.3d 388, 390 (7th Cir. 2012) (providing one of the duties the EMTALA imposes on hospitals with respect to patients who come to their emergency rooms, as to any emergency condition, is to stabilize the patient prior to any transfer to another facility) (citing 42 U.S.C. § 1395dd).  The position in which Anthony was placed and the state in which Boguslaw was unfortunate enough to reach were imaginably fraught with a gamut of emotions.  Nevertheless, the EMTALA does not fit the facts alleged here.  As with his discrimination claims, Boguslaw's allegations show nothing more than that the Defendant doctors and other Methodist staff provided sought-after medical treatment, provided information to Anthony based upon their medical judgment, and suggested a course of treatment based on the medical information and knowledge they had as to Boguslaw, and the Plaintiffs' wish that Boguslaw's hospital stay would have gone better.

Boguslaw fails to state a claim for violation of the EMTALA.[7]

**E**

As the Plaintiffs fail to state claims under Section 1983, the ACA, the Rehabilitation Act, the ADA, and the EMTALA, no federal claims remain in this case. "A district court has 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (quoting 28 U.S.C. § 1367(a)).  However, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).

---

[7] The Court recognizes that the November 2024 Order and Opinion provided that Boguslaw "can assert his own claims [under the EMTALA] if he wishes." (D. 25 at ECF p. 13).  The Order and Opinion does not constrain the Court to now find Boguslaw actually states a claim under the EMTALA.  That Order did not consider whether the first amended complaint's allegations were sufficient under Rule 12(b)(6) for Boguslaw to state an EMTALA claim.

15

The Court declines to exercise supplemental jurisdiction over the Plaintiffs' claims under the Illinois Health Care Surrogate Act and the Illinois Powers of Attorney for Health Care Law as well as the Plaintiffs' claims for intentional infliction of emotional distress, and five fraud counts.  Furthermore, the Court will not grant the Plaintiffs another opportunity to amend their complaint; any amendment would be futile in light of the Court's findings as to the Plaintiffs' federal claims.  *See Florance v. Barnett*, No. 23-1453, 2023 WL 7017085, at *3 (7th Cir. Oct. 25, 2023) ("The problems we have described are matters of law and cannot be remedied with new or augmented factual allegations.").  In other words, it is certain from the face of the Second Amended Complaint that any amendment would be otherwise unwarranted.  *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).

## IV

For the reasons set forth, *supra*, Defendants Ravindra Kashyap, MD, Aiyub Patel, MD, and Methodist Medical Center of Illinois's Motion to Dismiss Plaintiff's Second Amended Pro Se Civil Rights Complaint (D. 30) is GRANTED.  This case is DISMISSED with prejudice.  The Clerk is directed to enter judgment and close this case.

*It is so ordered.*

Entered on April 14, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE